# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| JOHN K. LAWRENCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:16-cv-00012 |
| | ) | REEVES/LEE |
| COFFEE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, STEVE GRAVES, | ) | |
| COFFEE COUNTY BOARD OF | ) | |
| COMMISSIONERS, PAM FREEMAN, | ) | |
| RICK GENTRY, QUALITY | ) | |
| CORRECTIONAL HEALTH CARE, | ) | |
| and DR. JOHNNY BATES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 [Doc. 2]. Prior to transferring the case to this division, the United States District Court for the Eastern District of Tennessee, Knoxville Division, granted Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 3]. For the reasons set forth below, no process shall issue, and the case will be **DISMISSED**.

## I.   PLAINTIFF'S COMPLAINT

In his complaint, Plaintiff alleges that his constitutional rights were violated at the Coffee County Jail, in Manchester, Tennessee, where he was formerly confined. Plaintiff complains that mentally ill inmates at Coffee County Jail do not seek mental health treatment due to a jail policy [Doc. 2 p. 4]. As an attachment to his complaint, Plaintiff provided a copy of the jail's rules and regulations handout outlining "qualifications to be placed to work" [Doc. 2-1]. The qualification relevant to Plaintiff's complaint states "[Inmates] [c]annot have a mental illness or be sent for

mental evaluation" [*Id*. p. 22]. Plaintiff alleges that due to this policy, inmates who wish to work do not seek treatment for their mental illness [Doc. 2]. Plaintiff claims that by accepting this policy, Defendants are "discriminating against [Plaintiff] as a mentally ill inmate" and "acting deliberately indifferent to his Eighth and Fourteenth Amendment rights" [*Id*.]. Plaintiff claims he was attacked on three different occasions by three different inmates, all of who suffer from mental health issues, but refuse treatment due to the above-mentioned policy [*Id*.].

The first altercation occurred on May 13, 2015, when inmate Joshua Cole attacked Plaintiff causing serious injury [*Id*. at 4]. The second altercation occurred on June 8, 2015, when inmate Danielle Dexter attacked Plaintiff causing serious injuries [*Id*.]. Plaintiff states that Defendant Pam Freeman "is well acquainted with inmate Dexter and has personal knowledge of his mental illness" [*Id*.].

The third altercation occurred on July 2, 2015 [*Id*.]. On this day Plaintiff alleges that inmates David Fletcher and Paul Fletcher, Jr. "attacked and beat [him]" [*Id*. at 6]. In his complaint, Plaintiff describes the incidents leading up to this third physical altercation as follows [*Id*.].

> a.) After waiting 20 minutes in a line to use a unit telephone inmate David Fletcher attempted to tell the Plaintiff the phone he had acquired for use was 'his phone.' Inmate Fletcher then told the Plaintiff he would 'beat his ass' if he did not give up the phone, which the Plaintiff refused to do.
>
> b.) When the phone call ended inmates David Fletcher, Paul Fletcher, Jr. and other members of their 'Gangster Disciples' street gang, and security threat group, accosted the Plaintiff and escorted him to his cell where inmate David Fletcher entered with the Plaintiff while the other inmates stood guard at the cell door.
>
> c.) Inmate David Fletcher immediately began punching the Plaintiff about the face, head and body. At same point inmate Paul Fletcher, Jr. entered the Plaintiff's cell and joined the assault of the Plaintiff.
>
> [Doc. 2 p. 6].

Plaintiff alleges that days prior to the fight between himself and inmate David Fletcher (hereinafter "Fletcher"), Fletcher went from cell to cell asking inmates if they wanted to fight [*Id*.]. He claims that five unnamed officers observed this aggressive behavior [*Id*.]. Additionally, prior to this fight, Plaintiff claims that he filed an emergency grievance to Defendant Rick Gentry concerning inmate Fletcher's intimidation and threats toward Plaintiff [*Id*.]. However, he received no response to the grievance until after the fight with inmate Fletcher on July 2, 2015 [*Id*.].

After the fight between Plaintiff and inmate Fletcher, Plaintiff spoke with Defendant Gentry at the jail and "made [him] aware of the problems [between himself and] inmate David Fletcher, Joshua Cole, Danielle Dexter, and other members of their gang" [*Id*.]. He also informed Defendant Gentry of the emergency grievance he filed on the matter prior to this incident [*Id*.]. Defendant Gentry advised Plaintiff that he had not received any such grievance and "would check into [it]" [*Id*.].

Two days later, on July 4, 2015, "a mass fight and riot broke out" between members of the Gangster Disciples and other inmates, including Plaintiff [*Id*.]. During this fight, Plaintiff suffered "serious bodily injury" [*Id*.]. Plaintiff states that Defendants failure to classify and separate the gang members, directly lead to these attacks on Plaintiff [*Id*.].

Plaintiff further alleges that on May 17, 2015, after moving to the new Coffee County Jail, Defendant Dr. Bates removed Plaintiff from his mental health medication [*Id*. at 4]. Prior to entering the jail, an outside psychiatrist prescribed Plaintiff to Seroquel as an anti-psychotic/mood stabilizer [*Id*.]. However, Dr. Bates informed Plaintiff that "he was acting doctor for multiple jails in the area" and "no inmates under his care were on either Seroquel or Wellbutrin due to their expense" [*Id*.]. Plaintiff alleges that Dr. Bates acted deliberately indifferent to his medical

3

needs by not prescribing him the same medication as his outside psychiatrist in order to cut costs [*Id*. at 8].

## II. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The pleading must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citations and internal quotation marks omitted). The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

## III. ANALYSIS OF CLAIMS

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–56 (1978); *Black v. Barberton Citizens Hosp.*, 1.34 F.3d 1265, 1267 (6th Cir. 1998).

4

Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

      A.      **Medical Claim Regarding Prescription Medication**

The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment." The Eighth Amendment's ban against cruel and unusual punishment obliges prison authorities to provide medical care for prisoners' serious medical needs. In order to state a claim under § 1983 in the medical context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir .1994).

A "serious medical need" is defined "as one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). The test for whether a defendant has demonstrated deliberate indifference to medical needs is a subjective inquiry into the defendant's state of mind rather than an objective test. Negligence, even gross negligence, will not support a § 1983 claim for denial of medical care. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). "Deliberate indifference to serious medical needs" is distinguishable from an inadvertent failure to provide adequate medical care. *Estelle*, 429 U.S. at 106. Where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

5

Plaintiff claims that an outside psychiatrist prescribed him Seroquel as a mood stabilizer prior to entering jail [Doc. 2 p. 4]. Plaintiff asserts that Defendant, Dr. Bates, took Plaintiff off this specific brand of medication upon entering jail due to the drug's expense [*Id.*]. Plaintiff states that, although, there are other medications for his condition, based on past experience, he reacts best to Seroquel [*Id.*].

Plaintiff's assertion that Dr. Bates refused to distribute his prescription medication because of its cost fails to state a constitutional violation. *See, Tribe v. Englelsgjerd*, No. 00-10451-BC, 2002 WL 31051984 (E.D. Mich. Sept. 11, 2002) (Prison physician's refusal to prescribe medication of prisoner's choice did not violate Eighth Amendment, where physician prescribed alternative medication and prisoner provided no evidence that such medication was ineffective.). This claim appears to concern Plaintiff's personal satisfaction with the medical care he received, not the doctor's deliberate indifference to his serious medical needs. Plaintiff provides no information that an alternative medication would be ineffective; rather, he claims that he strongly prefers Seroquel. That medical decision, however, rests within the discretion of the physician, not the patient. Absent allegations that alternative medication would not treat Plaintiff's ailment, no Eighth Amendment claim is stated.

The Court finds that Defendant Dr. Bates's conduct does not amount to an intent to inflict unnecessary pain or suffering or otherwise to punish Plaintiff, which, as noted earlier, is the culpable mental state necessary to a finding of deliberate indifference. *Horn by Parks*, 22 F.3d at 660. As such, Plaintiff's claim of deliberate indifference to a serious medical claim is **DISMISSED**.

B.     **Failure to Protect**

Although Plaintiff has not identified any specific constitutional bases for his allegations regarding the physical confrontation with three inmates, liberally construing Plaintiff's allegations

6

and prayer for relief, the Court discerns that Plaintiff is attempting to assert claims under the Eighth Amendment to the United States Constitution for failure to protect.

### 1. Personal Safety

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. This right includes the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). To establish a violation of this right, a plaintiff must show that a defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). To demonstrate deliberate indifference, the plaintiff must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregarded that risk by failing to take reasonable measures to abate it" *Greene v. Bowles*, 361 F.3d 290, 294, *quoting Farmer*, 511 U.S. at 829, 847. Generally, an isolated or occasional attack is insufficient to state an Eighth Amendment claim. *See Stewart v. Love*, 696 F.2d 43, 44 (6th Cir. 1982).

### 2. Analysis

Prior to the alleged assaults with inmates Joshua Cole and Danielle Dexter, Plaintiff failed to assert that any Defendant was made aware of any threat specific to Plaintiff. Although Plaintiff alleges that Defendant Pam Freeman had knowledge of inmate Dexter's mental illness and that he was not on any medication for that illness, nothing in the complaint alleges that Defendant Freeman had any knowledge that Dexter posed a threat to Plaintiff's safety as a result of his mental illness. Accordingly, Plaintiff has not met the subjective component necessary to establish an

Eighth Amendment violation because he failed to allege that Defendants possessed a sufficiently culpable state of mind prior to the attacks from inmates Cole and Dexter.

As to Defendant Rick Gentry, Plaintiff alleges that days prior to the fight between Plaintiff and inmate David Fletcher, Plaintiff filed an emergency grievance concerning inmate Fletcher's intimidation and threats toward Plaintiff [Doc. 2 p. 6].  However, Plaintiff did not receive a response to the grievance until after the physical altercation on July 2, 2015 [*Id*.].  Following the fight, Plaintiff informed Defendant Gentry of the emergency grievance filed on the matter prior to this incident [*Id*.].  Defendant Gentry advised Plaintiff that he had not received said grievance and "would check into [it]" [*Id*.].

Plaintiff attached the relevant grievance to his complaint [Doc. 2-1 p. 39].  The grievance, dated June 29, 2015, states that inmate Fletcher "intimidates" other inmates and Plaintiff asks for Fletcher to be moved to another division [*Id*.].  Three days later, on July 2, 2015 (the same day as the physical altercation between Plaintiff and Fletcher), a response to the grievance provided as follows, "Did not get to this until after the situation that occurred on July 2, 2015.  I believe we have taken actions to help this situation."  [*Id*.].  This attached exhibit proves that, at the time of the alleged assault by inmate Fletcher, Defendant Gentry was unaware of any threat to Plaintiff.  Although there is no set time a grievance should be responded to, three days is not an excessive amount of time between the filling of the grievance and the response.  If Defendant Gentry was unaware of the grievance filed at the time of the fight, he, therefore, did not know of any "intimidation" by inmate Fletcher toward Plaintiff or other inmates.  Plaintiff failed to demonstrate the necessary requirement of deliberately indifferent by Defendant Gentry. Accordingly, this Eighth Amendment claim for failure to protect from inmate Fletcher is **DISMISSED**.

Further, two days following the physical altercation between Plaintiff and inmate Fletcher, "a mass fight and riot broke out" between members of the Gangster Disciples and other inmates, including Plaintiff [Doc. 2 p. 7]. In his complaint, Plaintiff asserts that "the jail's" failure to classify and separate the gang members directly lead to this riot [*Id.*]. This, allegation is flawed for two reasons.

First, Plaintiff fails to follow the Federal Rules of Civil Procedure pleading standard, because he does not connect any Defendant to this allegation. *See* F.R.C.P. 8(a)(2). It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that in order to state a claim, the plaintiff must make sufficient allegations to give a defendant fair notice of the claim). As previously stated, pro se litigants "are held to less stringent [pleading] standards than . . . lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, this Court's "lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Neither [this] Court nor other courts . . . have been willing to abrogate basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Second, even if Plaintiff had asked a specific defendant to place certain inmates in different areas of the jail, the Court notes that transfers and inner prison inmate housing are functions wholly within the discretion of the prison authorities. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Inmates have no right to be housed, or to request other inmates be housed, in a particular institution or a particular part of an institution. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Beard v.*

*Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). For these reasons, any claim alleging failure to separate gang members will be **DISMISSED**.

IV. **CONCLUSION**

Based on the foregoing, this action will be **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

**AN APPROPRIATE ORDER WILL ENTER.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**